## SEESE et al. v. BETHLEHEM STEEL CO. SHIPBUILDING DIV.

### No. 5723.

Circuit Court of Appeals, Fourth Circuit.

May 5, 1948.

Maurice Braverman, of Baltimore, Md., for appellants.

William L. Marbury, of Baltimore, Md. (Marbury, Miller & Evans and Franklin G. Allen, all of Baltimore, Md., and Cravath, Swaine & Moore, of New York City, on the brief), for appellee.

I. Duke Avnet, of Baltimore, Md. (Edgar Paul Boyko, of Arlington, Va., on the brief), amici curiae.

Tom C. Clark, Atty. Gen., H. G. Morison, Asst. Atty. Gen., Enoch E. Ellison, Sp. Asst. to the Atty. Gen., and Johanna M. D'Amico, of Washington, D. C., Atty., Dept. of Justice, on the brief), for the United States, intervenor.

Before PARKER and SOPER, Circuit Judges, and BRYAN, District Judge.

PARKER, Circuit Judge.

This is an appeal in a suit filed in behalf of one hundred or more employees of the Bethlehem Steel Company to recover overtime pay and liquidated damages under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. There is no allegation or con-

tention that plaintiffs were not paid the minimum wages prescribed by the act, with time and half for overtime, if regard be had to contract, custom or practice; but recovery is asked solely on the ground that plaintiffs were required to be on the premises of defendant before and after working time for the purpose of changing clothes and walking to and from the place where the work was carried on. The contention of plaintiffs is that this time spent on defendant's premises must be counted as working time under the Fair Labor Standards Act and that overtime compensation must be computed with respect thereto, reliance being placed upon the decisions of the Supreme Court in Tennessee Coal Co. v. Muscoda Local, 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949, 152 A.L.R. 1014; Jewell Ridge Co. v. Local No. 6167, 325 U.S. 161, 65 S.Ct. 1063, 89 L.Ed. 1534; and Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515.

While the case was pending in the court below, Congress passed the Portal-to-Portal Act of May 14, 1947, 29 U.S.C.A. § 251 et seq., taking away the right to recover in such case, except for an activity compensable under the express provisions of a contract or by custom or practice, and depriving the Courts of the United States of jurisdiction thereof. A motion was made to dismiss the complaint on the ground that it failed to state a case upon which relief could be granted or of which the court had jurisdiction because it failed to allege contract, custom or practice as a basis of compensation.

The District Judge offered plaintiffs an opportunity to amend the complaint to plead contract, custom or practice within the meaning of the statute if they desired to amend; but they declined to do so, contending that its provisions prescribing such conditions of recovery with respect to existing causes of action were unconstitutional. The judge then held the act constitutional and dismissed the action. Seese et al. v. Bethlehem Steel Co., D.C., 74 F.Supp. 412. The appeal from the dismissal presents squarely the question of the constitutionality of the act, since, unless it was constitutional, a valid cause of action of which the court had jurisdiction

was well pleaded. We entertain no doubt that we should pass upon the question of constitutionality thus raised. Nothing would be gained by remanding the case for a finding of facts; and it is manifestly in the public interest that the question of constitutionality raised in the case be promptly determined. Cf. United States v. Petrillo 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877.

The Fair Labor Standards Act 29 U.S. C.A. § 201 et seq., is a statute enacted by the Congress under the Commerce Clause of the Constitution, Art. 1, § 8, cl. 3. United States v. Darby 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430. It provides for fixing minimum wages and maximum hours for employees engaged in commerce or in the production of goods for commerce within the meaning of the act. Section 7 prescribes the hours of a maximum work week and forbids employment for any time in excess thereof unless the employee shall be paid time and a half for overtime. 29 U.S.C.A. § 207. Section 16 prescribes criminal penalties and in addition fixes civil liability for violation, providing that any employer violating the act "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages". 29 U.S.C.A. § 216. The act does not define "work" or "work week" or have anything to say as to whether or not preliminary or incidental activities shall be compensable. This was left to private agreement, and, in the absence of such agreement, was not generally thought to be compensable or to have any relation to the work week prescribed by the act.

In the three portal to portal cases referred to above, the Muscoda case, the Jewell Ridge case and the Mt. Clemens Pottery case, the Supreme Court decided that the work week prescribed by the act should be construed to include preliminary and incidental activities of the employee, such as walking to work on the employer's premises, changing to work clothes etc. The effect of this construction was to give rise to a flood of claims against employers

with respect to matters which up to that time had not been regarded by either employer or employee as compensable or as having any relation to the length of work week prescribed by the act. The Judiciary Committee of the House found that between July 1, 1946, and January 31, 1947, there were 1913 cases involving claims of this sort filed in the federal courts alone, that 398 of these did not claim specific amounts and that the remainder claimed a total of $5,785,204,606.00. Significant was the fact that 62% of these suits were filed during the last month of the seven months period considered. Not only did these suits threaten ruin to numerous employers throughout the country (who under the decisions of the Supreme Court could not make binding settlements with the claimants even with respect to the liquidated damages involved, Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296), but they presaged great loss to the government itself. Claims aggregating $600 000,000 had been filed on contracts entered into by the War Department on a cost plus basis and the Undersecretary of War estimated the potential liability at $1,400,000,000. In five suits against the Maritime Commission the amount claimed was $128,500,000. The suits undoubtedly constituted a serious threat to industrial relations and the principle of collective bargaining in interstate commerce. See H.R. No. 71, February 25, 1947.

In passing the Portal-to-Portal Act of May 14, 1947, Congress, as a part of the act, carefully set forth the facts upon which its action was based and appraised their effect upon interstate commerce and other matters as to which it possessed governmental power, in the following language:

"The Congress hereby finds that the Fair Labor Standards Act of 1938, as amended, has been interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers with the results that, if said Act as so interpreted or claims arising under such interpretations were permitted to stand, (1) the payment of such liabilities would bring about financial ruin of many employers and seriously impair the capital resources of many others thereby resulting in the reduction of industrial operations, halting of expansion and development, curtailing employment and the earning power of employees; (2) the credit of many employers would be seriously impaired; (3) there would be created both an extended and continuous uncertainty on the part of industry, both employer and employee, as to the financial condition of productive establishments and a gross inequality of competitive conditions between employers and between industries; (4) employees would receive windfall payments, including liquidated damages, of sums for activities performed by them without any expectation of reward beyond that included in their agreed rates of pay; (5) there would occur the promotion of increasing demands for payment to employees for engaging in activities no compensation for which had been contemplated by either the employer or employee at the time they were engaged in; (6) voluntary collective bargaining would be interfered with and industrial disputes between employees and employers and between employees and employees would be created; (7) the courts of the country would be burdened with excessive and needless litigation and champertous practices would be encouraged; (8) the Public Treasury would be deprived of large sums of revenues and public finances would be seriously deranged by claims against the Public Treasury for refunds of taxes already paid; (9) the cost to the Government of goods and services heretofore and hereafter purchased by its various departments and agencies would be unreasonably increased and the Public Treasury would be seriously affected by consequent increased cost of war contracts; and (10) serious and adverse effects upon the revenues of Federal, State, and local governments would occur.

"The Congress further finds that all of the foregoing constitutes a substantial burden on commerce and a substantial obstruction to the free flow of goods in commerce.

"The Congress, therefore, further finds and declares that it is in the national public interest and for the general welfare, essential to national defense, and necessary to aid, protect, and foster commerce, that this Act be enacted. * * *"

The pertinent portions of the Portal-to-Portal Act, granting relief from the provisions of the Fair Labor Standards Act in so far as they permit recovery of portal to portal pay, and denying to the courts of the United States jurisdiction to entertain claims based thereon, are as follows:

"(a) No employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, * * * (in any action or proceeding commenced prior to or on or after the date of the enactment of this Act), on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any activity of an employee engaged in prior to the date of the enactment of this Act, except an activity which was compensable by either—

"(1) an express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer; or

"(2) a custom or practice in effect, at the time of such activity, at the establishment or other place where such employee was employed, covering such activity, not inconsistent with a written or nonwritten contract, in effect at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer.

* * * * * *

"(d) No court of the United States, of any State, Territory, or possession of the United States, or of the District of Columbia, shall have jurisdiction of any action or proceeding, whether instituted prior to or on or after the date of the enactment of this Act, to enforce liability or impose punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938, as amended, * * * to the extent that such action or proceeding seeks to enforce any liability or impose any punishment with respect to an activity which was not compensable under subsections (a) and (b) of this section." 29 U.S.C.A. § 252.

There can be no doubt that in passing this act Congress gave the most careful consideration to the question of its constitutionality. See H.R. 2157 80th Cong. 1st Sess.; S.Rep.No.48, 80th Cong. 1st Sess. See also opinion of Dean Bates 93 Cong.Rec. pp. 2306 et seq. Its constitutionality has been upheld by the Circuit Court of Appeals of the Sixth Circuit (Rogers Cartage Co. v. Reynolds 6 Cir. 166 F.2d 317) and by more than a hundred decisions of Federal District Courts and state courts to which our attention has been called. We list below those available in the Federal Supplement which we have had opportunity to read.[1] Plaintiffs contend,

---

[1] Burfeind v. Eagle-Picher Co. of Texas, D.C., 71 F.Supp. 929; Story v. Todd Houston Shipyard Co., D.C., 72 F.Supp. 690; Boehl v. Electro-Metalurgical Co., D.C., 72 F.Supp. 21; Darr et al. v. Mutual Life Ins. Co., D.C., 72 F.Supp. 752; Lasater et al. v. Hercules Power Co., D.C., 73 F.Supp. 264; Cochran v. St. Paul & Tacoma Lumber Co., D.C., 73 F. Supp. 288; Sadler v. W. S. Dickey Clay Mfg. Co., D.C., 73 F.Supp. 690; Hart v. Aluminum Co. of America, D.C., 73 F. Supp. 727; Johnson v. Park City Consol. Mines Co., D.C., 73 F.Supp. 852; Fajack v. Cleveland Graphite Co., D.C., 73 F. Supp. 308; Ditto et al. v. American Aluminum Co., D.C., 73 F.Supp. 955; May et al. v. General Motors Corporation, D.C., 73 F.Supp. 878; Reid v. Day & Zimmerman Corporation, D.C., 73 F.Supp. 892; Seese v. Bethlehem Steel Co., D.C., 74 F.Supp. 412; Ackerman v. J. I. Case Co., D.C., 74 Supp. 639; Bumpus v. Remington Arms Co., D.C., 74 F.Supp. 788; Role v. J. Neils Lumber Co., D.C., 74 F.Supp. 812; Moeller v. Eastern Gas & Fuel Associates, D.C., 74 F.Supp. 937; Hollingsworth v. Federal Mining & Smelting Co., D.C., 74 F.Supp. 1009; Conwell v. Central Missouri Telephone Co., D.C., 74 F.Supp. 542; Holland v. General Motors Corporation, D.C., 75 F.Supp. 274.

however, that the provisions of the statute just quoted are violative of the Constitution (1) in that they represent the exercise by Congress of judicial power and (2) in that they deprive plaintiffs of vested rights under existing contracts in violation of the due process clause of the Fifth Amendment. We think that both contentions are entirely without merit.

 The first contention requires but brief notice. It is true that the effect of the act is to take away rights held by the courts to arise under a statute as they have interpreted it; but this is done, not by the exercise of judicial but of legislative power. When the Fair Labor Standards Act was interpreted by the Supreme Court as requiring computation in the work week of time consumed in walking to work and other preliminary activities, this was just as though the original act contained express provision to that effect; and, when Congress passed the sections of the statute here under consideration, the effect was to repeal the original statute to the extent of that coverage and deny to the federal courts jurisdiction to entertain a suit based thereon. This does not in any manner affect adjudications already made, nor does it attempt to direct the courts in the exercise of judicial power. All that it does is to define rights, i. e., to amend or limit the effect of a prior statute so as to take away a cause of action given by it. Ackerman v. J. I. Case Co., D.C., 74 F.Supp. 639; Hollingsworth v. Federal Mining & Smelting Co., D.C., 74 F.Supp. 1009; note 49 Harvard Law Review 137, 140. Even where an act is declaratory in form as well as retroactive, it will be upheld ordinarily in those cases where retroactive legislation is permissible. Graham & Foster v. Goodcell, 282 U.S. 409, 51 S.Ct. 186, 75 L.Ed. 415; Stockdale v. Insurance Companies 20 Wall. 323, 22 L.Ed. 348. The rule was well stated by Mr. Justice Miller in the case last cited as follows:

"It is undoubtedly true that, in our system of goverment, the law-making power is vested in Congress, and the power to construe laws in the course of their administration between citizens, in the courts. And it may be conceded that Congress cannot, under cover of giving a construction to an existing or an expired statute, invade private rights, with which it could not interfere by a new or affirmative statute. But where it can exercise a power by passing a new statute, which may be retroactive in its effect, the form of words which it uses to put this power in operation cannot be material, if the purpose is clear, and that purpose is within the power."

 The question raised under the Fifth Amendment is that the statute takes property without due process in that it strikes down vested rights under existing contracts. The answer is that even rights arising out of contract cannot fetter Congress in the exercise of a power granted it by the Constitution, and that the rights stricken down by the statute are not rights arising out of contract at all, but rights created by statute as an incident of the statutory regulation of commerce. The Portal-to-Portal Act of May 14, 1947, like the Fair Labor Standards Act which it modified and amended, was an exercise by Congress of the power to regulate interstate and foreign commerce; and it is well settled that the exercise of such power is not invalidated even by the fact that its effect is to destroy rights under valid existing contracts. Such was the holding in Addyston Pipe & Steel Co. v. United States, 175 U.S. 211, 20 S.Ct. 96, 44 L.Ed. 136, where the court pointed out that private contracts as well as state legislation must yield in such case to the superior power of Congress. Such was the holding in Louisville & N. R. Co. v. Mottley, 219 U.S. 467, 31 S.Ct. 265, 55 L.Ed. 297, 34 L.R.A.,N.S., 671, where an act of Congress was held to strike down a contract made in settlement of a personal injury case. And such was the holding in the case of Norman v. Baltimore & O. R. Co., 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885, 95 A.L.R. 1352, where Congress in the exercise of the power to coin money and regulate its value struck down the "gold clauses" of private contracts.

In North American Co. v. Securities & Exchange Commission, 327 U.S. 686, 66 S.Ct. 785, 90 L.Ed. 945, and American

Power & Light Co. v. Securities & Exchange Commission, 329 U.S. 90, 67 S.Ct. 133, 91 L.Ed. 103, in which was upheld the constitutionality of the Public Utility Holding Company Act, 15 U.S.C.A. § 79 et seq., the Supreme Court had occasion to consider the power of Congress to interfere with existing contracts by legislation undertaken under the commerce clause. Nowhere in any of the opinions was doubt expressed as to this power. In the first of these cases the court said [327 U.S. 686, 66 S.Ct. 796]:

"This broad commerce clause does not operate so as to render the nation powerless to defend itself against economic forces that Congress decrees inimical or destructive of the national economy. Rather it is an affirmative power commensurate with the national needs. It is unrestricted by contrary state laws or private contracts. * * *

"We need not attempt here to draw the outer limits of this plenary power. It is sufficient to reiterate the well-settled principle that Congress may impose relevant conditions and requirements on those who use the channels of interstate commerce in order that those channels will not become the means of promoting or spreading evil, whether of a physical, moral or economic nature. Brooks v. United States 267 U.S. 432, 436, 437, 45 S.Ct. 345, 346, 69 L.Ed. 699, 37 A.L.R. 1407. This power permits Congress to attack an evil directly at its source, provided that the evil bears a substantial relationship to interstate commerce. Congress thus has power to make direct assault upon such economic evils as those relating to labor relations, National Labor Relations Board v. Jones & Laughlin Corporation, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; Polish Nat. Alliance v. National Labor Relations Board, 322 U.S. 643, 64 S.Ct. 1196, 88 L.Ed. 1509; to wages and hours, United States v. Darby, supra [312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430]; to market transactions, Stafford v. Wallace 258 U.S. 495, 42 S.Ct. 397, 66 L.Ed. 735, 23 A.L.R. 229; Chicago Board of Trade v. Olsen 262 U.S. 1, 43 S.Ct. 470, 67 L.Ed. 839; and to monopolistic practices, Northern Securities Co. v. United States, supra [193 U.S. 197, 353, 354, 24 S.Ct. 436, 463, 464, 48 L.Ed. 679]. * * * Once it is established that the evil concerns or affects commerce in more states than one, Congress may act. 'The framers of the Constitution never intended that the legislative power of the nation should find itself incapable of disposing of a subject-matter specifically committed to its charge.' In re Rahrer 140 U.S. 545, 562, 11 S.Ct. 865, 869, 35 L.Ed. 572."

Very much in point is the decision of the Supreme Court of Texas in National Carloading Corporation v. Phoenix-El Paso Express, Inc., 142 Tex. 141, 176 S.W.2d 564, 569, certiorari denied 322 U.S. 747, 64 S.Ct. 1156, 88 L.Ed. 1578, dealing with an act of Congress which retroactively wiped out claims against freight forwarders for undercharges. The Texas Supreme Court held the commerce power sufficient to support the legislation, saying: "The plaintiff asserts that it has a vested right in the recovery herein and urges that to give a retroactive effect to the provision in question is violative of the Fifth Amendment of the Constitution of the United States, which prohibits deprivation of property without due process of law. With this contention we cannot agree. We are here dealing with the exercise by Congress of a power conferred by the Federal Constitution to regulate interstate commerce. The provisions of the Fifth Amendment may not be invoked to obstruct a national policy which Congress has the power to adopt."

What we are dealing with in the case at bar is the regulation by Congress of wages and hours in interstate commerce. The Fair Labor Standards Act did not provide payment for employees engaged in that commerce but means by which wages might be regulated through application of maximum and minimum standards. When it was learned that this instrument of regulation was about to be used in such way as to injure the very commerce that it was designed to help, it is idle to say that Congress was without power to amend it in such way as to avoid the evil that was threatened.

■ We do not mean to say, of course, that the limitations of the Fifth Amendment do not apply to the exercise of a power granted Congress by the Constitution; but the inquiry is, not whether vested rights or rights under existing contracts have been interfered with, but whether or not the power has been exercised arbitrarily or unreasonably under the circumstances. Not even in the exercise of the commerce power may Congress take one man's property and give it to another or arbitrarily strike down rights arising under contract; but nothing of that sort is involved here. The claims to portal to portal pay stricken down by the act were not based on contract, custom or practice, for such claims were expressly excepted from its provisions. What was taken away was the right to recover on claims of purely statutory origin, claims given by statute not as compensation for labor performed but as a means of regulating wages and hours of work in interstate commerce. Missel v. Overnight Motor Transp. Co., 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682; Brooklyn Sav. Bank v. O'Neil 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296. Even where the contract clause is a limitation upon legislative power, it is universally held that such a claim may be taken away by the legislature without violation of constitutional right. Since the legislature may repeal its own act, it may take away that which has no existence save by virtue of that act. Norris v. Crocker 13 How. 429, 14 L.Ed. 210; Ewell v. Daggs 108 U.S. 143, 151, 2 S.Ct. 408, 413, 27 L.Ed. 682; Pearsall v. Great Northern R. Co., 161 U.S. 646, 16 S.Ct. 705, 40 L.Ed. 838; Atlantic Coast Line R. Co. v. Goldsboro, 232 U.S. 548, 34 S.Ct. 364, 58 L.Ed. 721; West Side Belt R. Co. v. Pittsburg Const. Co., 219 U.S. 92, 31 S.Ct. 196, 55 L.Ed. 107; National Carloading Corp. v. Phoenix-El Paso Express, supra. The reason underlying the rule was stated by Mr. Justice Matthews in Ewell v. Daggs, supra, as follows: "And these decisions rest upon solid ground. * * * The more general and deeper principle on which they are to be supported is, that the right of a defendant to avoid his contract is given to him by statute, for purposes of its own, and not because it affects the merits of his obligation; and that whatever the statute gives, under such circumstances, as long as it remains in fieri, and not realized by having passed into a completed transaction, may, by a subsequent statute, be taken away. It is a privilege that belongs to the remedy, and forms no element in the rights that inhere in the contract."

Looked at in another way, all that Congress has done by the legislation here under consideration is to validate the contracts and agreements between employer and employee which were invalid under the Fair Labor Standards Act by reason of the interpretation placed by the Supreme Court upon that act; and the authority of the legislative body to validate voluntary transactions which at the time they were entered into were by statute invalid or illegal has been repeatedly upheld. West Side Belt R. Co. v. Pittsburgh Const. Co., 219 U.S. 92, 31 S.Ct. 196, 55 L.Ed. 107; McNair v. Knott 302 U.S. 369, 372, 58 S.Ct. 245, 82 L.Ed. 307. In other words, the contracts of employment which contemplated that no payment should be made for the portal to portal activities but that these were to be compensated by the agreed wage, were invalid only because of the provisions of the Fair Labor Standards Act. There was nothing in law or in reason which forbade Congress to give validity to these contracts retroactively, just as the invalid pledge of securities by National Banking Associations was validated by retroactive legislation in the case of McNair v. Knott, supra.

Plaintiffs rely upon such cases as Steamship Co. v. Joliffe, 2 Wall. 450, 17 L.Ed. 805; Ettor v. City of Tacoma, 228 U.S. 148, 33 S.Ct. 428, 57 L.Ed. 773; Coombes v. Getz, 285 U.S. 434, 52 S.Ct. 435, 76 L.Ed. 866; and Duke Power Co. v. South Carolina Tax Com'n, 4 Cir., 81 F.2d 513; but these cases are not in point. They were concerned with vested property rights based on agreements and not on mere statutory provisions without contract or agreement to support them. It is argued that the provisions of the statute must be read into the contract of employment and that

the right to recover compensation in accordance with its terms accrues upon the rendering of services. As stated above, however, the true situation with respect to claims affected by the Portal-to-Portal Act is that that act validates the real contract between the parties and merely takes away a statutory remedy given by the prior act. Even if the provisions of the Fair Labor Standards Act be read into contracts of employment, so also must be read the constitutional power of Congress to change that act. As said in Home Building & Loan Ass'n v. Blaisdell, 290 U.S. 398, 435, 54 S.Ct. 231, 239, 78 L.Ed. 413, 88 A.L.R. 1481: "Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order."

There is nothing in the result accomplished by the statute upon which it can be condemned as an unreasonable exercise of the commerce power by Congress. As a matter of fact, all that it does is prevent employees reaping an unexpected windfall from an unexpected court decision. In another situation where parties were about to be enriched by unexpected profits resulting from another decision, Congress passed the "windfall" tax act of 1936, Revenue Act of 1936, Title III, § 501(a) (1), 26 U.S.C.A.Int.Rev.Code, § 700(a) (1), taking 80% of the windfall for the government by way of retroactive taxation. We held the tax valid in White Packing Co. v. Robertson, 4 Cir., 89 F.2d 775. See also Anniston Mfg. Co. v. Davis, 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143. There is certainly nothing unreasonable or arbitrary in the repeal of the provisions of an act which would make possible the recovery of a "windfall" which would have such disastrous effects upon commerce as Congress foresaw and pointed out.

Since the provisions of sec. 2(a) of the act, striking down portal to portal claims not based on contract, custom or practice are valid, there can be no question as to the validity of sec. 2(d) denying jurisdiction to the courts to entertain the claims. Kline v. Burke Const. Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226, 24

A.L.R. 1077. Whether the denial of jurisdiction would be valid if the provision striking down the claims were invalid is a question which does not arise.

For the reasons stated the judgment appealed from will be affirmed.

Affirmed.