**McDANIEL et al. v. BROWN & ROOT, Inc., et al.**

**No. 3724.**

United States Court of Appeals Tenth Circuit.

Jan. 26, 1949.

Rehearing Denied Feb. 18, 1949.

---

John W. Porter, Jr., of Muskogee, Okl. (Arnote & Arnote, of McAlester, Okl., and Porter & Porter, of Muskogee, Okl., on the briefs), for appellants.

A. J. Wirtz, of Austin, Tex. (Charles A. Moon, of Muskogee, Okl., and Ben H. Powell, Jr., of Austin, Tex., on the brief), for appellee, Brown & Root.

Tom Clark, Atty. Gen., H. G. Morison, Asst. Atty. Gen., Cleon A. Summers, U. S. Atty., of Muskogee, Okl., Enoch E. Ellison, Sp. Asst. to the Atty. Gen., Francis Stewart, Asst. U. S. Atty., of Muskogee, Okl., and Johanna M. D'Amico, of Washington, D. C., for United States.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

PHILLIPS, Chief Judge.

This action was brought against Brown & Root, Inc., and W. S. Bellows Construction Company,[1] contractors under a cost-plus-a-fixed-fee contract, by McDaniel for himself and as agent for 39 other former employees[2] of the contractors to recover additional compensation under the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 201–219. After the action was commenced, McDaniel, as agent for 61 other persons, intervened and sought like relief.[2]

[1] Hereinafter referred to collectively as the contractors.

[2] McDaniel and the other persons suing by him as their agent, either as original plaintiffs or interveners, will be referred to collectively hereinafter as plaintiffs.

The action was predicated on the Portal-to-Portal doctrine announced in Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515. In their complaint, plaintiffs alleged that each plaintiff was employed by the contractors for approximately one and one-half years, was engaged from ten and one-half to eleven and one-half hours every day during his employment, and was paid only at regular rates of pay for ten hours for each day he worked; that the plaintiffs, in performing such work for the employers, were engaged in commerce and in production of goods for commerce as defined in the Fair Labor Standards Act of 1938; that their work constituted emergency war work covered by Executive Order No. 9240, 40 U.S.C.A. § 326 note; and that the construction contract provided for part of the regular and overtime wage rates to be paid by the contractors to persons employed to carry out the work.[3]

In July, 1942, the Department of the Navy awarded to the contractors cost-plus-a-fixed-fee contract NOy-5691 for the construction of a Naval Ammunition Depot[4] on a 50,000-acre tract of land situated near McAlester, Oklahoma. At the time construction was commenced under the contract, the only improvements on the land consisted of farm dwellings and farm buildings. Before the construction of the Naval Depot, the site thereof had been utilized only for agricultural purposes. There was no other ammunition depot nor any plant or facility used in commerce or in the production of goods for commerce anywhere in the vicinity of the Naval Depot.

The work performed by the contractors under the contract was entirely original construction of new buildings and new facilities.

The Naval Depot was first placed in operation in October or November, 1943. It was designed and has been used only to produce munitions for war. The contractors and their employees had nothing whatever to do with the production of munitions or any other article at the Naval Depot or with the maintenance or operation of the Naval Depot. They were engaged exclusively in the original construction thereof.

The work of the employees under the contract was under the continuous supervision and direction of an officer of the Civil Engineering Corps, United States Navy. Such officer was designated, and will hereinafter be referred to, as the Officer-in-Charge. He acted as contracting officer. All materials, supplies, and equipment used by the contractors in carrying out the work under the contract were either furnished by the United States or purchased by the contractors, as agents of the United States, and title thereto vested in the United States at the points where the shipments thereof originated. The Officer-in-Charge supervised and directed all phases of work under the contract. All hiring, classification and rate of pay, changes in rates of pay and classification, and discharges were submitted to and approved by the Officer-in-Charge. All the payroll and payroll checks were inspected and approved by the staff of the Officer-in-Charge. Policies with respect to straight time and overtime pay and as to what constituted compensable working time were determined by the Officer-in-Charge and covered by directives issued by him, which were approved by inspectors of the Wage and Hour and Public Contracts Division of the Department of Labor and of the National War Labor Board.

The contractors employed the plaintiffs to perform work on the original construction of the Naval Depot. The Officer-in-Charge required the contractors to maintain guards at the two entrances to the Naval Depot grounds to prevent unauthorized persons from entering. Employees, before entering, were required to show their badges of employment. Employees, on en-

---

[3] Attached to the contract was a schedule of wage rates, and the contract provided that the contractors should pay their employees weekly the full amounts of wages accrued at time of payment, computed at not less than the rates set forth in such schedule. The contract further provided that the wages of employees should be computed on a basic day rate of eight hours per day and that work in excess of eight hours should be permitted only on the condition that the employee should be compensated for all hours worked in excess of eight hours per day at not less than one and one-half times the basic rate of pay.

[4] Sometimes referred to herein as the Naval Depot.

tering the Naval Depot grounds, were not under the control, orders, or direction of the contractors until they reported to their foremen for work. Many employees, after entering the Naval Depot grounds and before reporting for work, were permitted to go to the lunchroom or to the commissary or to engage in social intercourse, and were privileged to leave the Naval Depot grounds without reporting for work. There were no time clocks on the Naval Depot grounds. Each foreman kept the time each employee under him reported for work and the time each such employee quit for the day. Each week all employees were paid at the agreed rate for all such hours of work performed, and each employee working more than eight hours in any 24-hour period, or more than 40 hours in any work week, received one and one-half his regular hourly rate of pay for each such additional hour and, for each hour of work performed on the seventh consecutive day, each employee received double his regular hourly rate of pay. The regular rates of pay of plaintiff ranged from fifty cents to $1.25 per hour. Weekly payroll checks were given to each employee, showing the number of hours worked, rate of pay, and total compensation earned, together with a statement showing gross earning, O.A.I., tax deductions and net pay. There was a well-known procedure whereby any employee, not satisfied as to the amount of his payroll check, could have errors corrected, and any additional compensation due added to his payroll check for the next succeeding week.

Plaintiffs worked for the employers in 1942 and 1943. The decision in the Mt. Clemens Pottery case was handed down June 10, 1946. The plaintiffs did not commence this action until December 14, 1946. The foregoing facts, coupled with the allegations of the complaint, show clearly that the action is predicated on the Portal-to-Portal doctrine.

The contractors had not, either by oral or written contract, agreed to compensate their employees for any preliminary or postliminary time and there was neither custom nor practice to compensate employees for such time at the Naval Depot, and the policy not to compensate for such time was uniformly recognized by all the employees at the Naval Depot, by the employees' supervisory staff, the Officer-in-Charge, and the representatives of the National War Labor Board and the Wage and Hour and Public Contracts Division of the Department of Labor.

Service was had only on Brown & Root, Inc. It interposed a motion to dismiss the complaint on the ground that the Fair Labor Standards Act of 1938 did not apply or extend to employees engaged in original construction and, therefore, plaintiffs had no cause of action under the Portal-to-Portal doctrine.

The trial court overruled the motion because the plaintiffs had alleged in their complaint that the contractors, under the construction contract with the Department of the Navy, had agreed "to build all or portions of and repair and build additions to" the armament shell loading plant, known as the Naval Depot. The court stated, however, that the facts with respect to the work performed in the repairing of the plant and the building of additions thereto should be pleaded with specificity.

Thereafter, and on June 9, 1947, Brown & Root, Inc., filed a motion for an order requiring the plaintiffs to plead with specificity the facts respecting the work performed by them in the repair of existing facilities or in the construction of additions to existing facilities which were in use in the production of goods for commerce.

At a pretrial conference held on October 13, 1947, the trial court endeavored without avail to have the plaintiffs disclose orally wherein they had worked on the repair of, or in the construction of additions to, existing facilities at the Naval Depot, and finally dismissed the complaint with leave to file an amended complaint wherein the facts with respect to the repair of, and the construction of additions to, existing facilities at the Naval Depot should be alleged with specificity.

On October 30, 1947, plaintiffs filed an amendment to their complaint in which they alleged that it was "intended and expected that said shell loading plant" at the Naval Depot "would be used in connection with and as an addition to existing commercial facilities and plants already being

used in the production of goods for commerce," and that such plant "was so used."

While the case pended, the Portal-to-Portal Act of May 14, 1947, 29 U.S.C.A. §§ 251, 262, was enacted.

The plaintiffs did not allege an express provision of any written or oral contract in effect between the contractors and any plaintiff, his agent, or collective bargaining representative, during the period of his employment by the contractors at the Naval Depot, obligating the contractors to compensate him for time preliminary to the time he reported to his foreman for productive work or postliminary to the time he ceased such productive work, or any custom or practice in effect at the time of his employment at the Naval Depot by which either such preliminary or postliminary time was compensable. On the contrary, the facts showed clearly that no such contract, custom, or practice existed between the contractors and their employees at the Naval Depot.

On June 3, 1947, the plaintiffs filed a motion seeking an adjudication that the Portal-to-Portal Act did not apply to the instant case and that if it did apply, it was unconstitutional.

On July 7, 1947, the contractors filed a supplemental motion to dismiss the action on the ground that the Portal-to-Portal Act deprived the court of jurisdiction over the subject-matter of the instant case.

On September 8, 1947, the United States, with leave of court, intervened in the action and prayed that the court uphold the constitutionality of the Portal-to-Portal Act.

In the amendments to their complaint filed October 30, 1947, plaintiffs averred that each claim sued on arose out of a separate written contract entered into between each claimant employee and Brown & Root, Inc., and that each of such contracts constituted a written promise by Brown & Root, Inc., to pay each claimant employee the wages and compensation sued for in the action, and plaintiffs attached, as exhibits, written forms, and alleged that such forms were executed by each of the claimant employees and Brown & Root, Inc.

They further alleged in general terms that plaintiffs worked more than 40 hours each week at production work as distinguished from preliminary or postliminary activities, but were compensated therefor only at their regular hourly rate of pay.

There is nothing in the contract forms attached as exhibits to the amendments to the complaint which obligates Brown & Root, Inc., expressly or impliedly to compensate its employees for preliminary or postliminary activities.

On November 17, 1947, Brown & Root, Inc., filed a motion to dismiss for want of jurisdiction on the following grounds: (1) That the contractors, in performing the work under the construction contract, were not engaged in commerce or in the production of goods for commerce; (2) that in so far as the claims of plaintiffs were predicated on preliminary and postliminary time, jurisdiction of the subject-matter had been withdrawn from the court by the Portal-to-Portal Act of 1947; (3) that the court was without jurisdiction because the action was not one arising under the Constitution or laws of the United States, under any law regulating commerce, or under the Fair Labor Standards Act of 1938 and; (4) that the claims of the several plaintiffs could not be aggregated and that the claim of each plaintiff was less than $3,000, exclusive of interest and costs.

On March 6, 1948, the trial court filed a memorandum in which it sustained the constitutionality of the Portal-to-Portal Act, held that its provisions were applicable to the claims asserted in the instant action, and that such Act had deprived the trial court of jurisdiction over the subject-matter of the instant action. It further held that the maximum of any claim computed on the basis of one and one-half hours per day for a period of two years of uncompensated work at the maximum regular rate of $1.25 per hour or at either one and one-half or double the maximum rate per hour would not equal $3,000 and, since the claims could not be aggregated, the requisite jurisdictional amount would not be involved if recovery should be predicated on any basis other than the provisions of the Fair Labor Standards Act of 1938. It concluded that it lacked jurisdiction over the subject matter of the action.

On April 5, 1948, the trial court entered its order dismissing the action.

Plaintiffs have appealed.

It is entirely clear on this record that, in performing the construction contract, the contractors were engaged solely in original construction of new buildings and new facilities and that during all the time the plaintiffs were employed by the contractors at the Naval Depot, the plaintiffs were engaged in the original construction of new buildings or facilities and were not at any time engaged in the work of repairing an existing building or facility or in constructing replacements of, or additions to, an existing building or facility.

██ It is now well settled that employees engaged in the original construction of a new building or facility are not within the coverage of the Fair Labor Standards Act of 1938, even though the building or facility, when completed, will be used for the production of goods for commerce or as an instrumentality of interstate commerce.[4]

The reason for the rule is that since the new building or facility in the original construction of which the employee works has not yet been dedicated to use in the production of goods for commerce, although it may be intended to be so used when completed, such work does not have such a close and immediate tie to the production of goods for commerce as to bring such worker within the coverage of the Fair Labor Standards Act of 1938.

While it is true that the Naval Depot, when completed, was to be used in a joint effort to win the war, to which other plants, depots, and facilities would make similar contributions the Naval Depot was in no proper sense an addition to an existing facility.[5]

██ We agree with the conclusion of the Eighth Circuit in Crabb v. Welden Bros., 164 F.2d 797, 803, that the District Courts are without jurisdiction to adjudicate claims based on Executive Order No. 9240, 40 U.S.C.A. § 326 note. See, also, Sweet v. B. F. Goodrich Co., D.C.N.D. Ohio, 68 F.Supp. 782, and Jessee v. Tenn. Eastman Corp., 14 Labor Cases, Par. 64,540 (1948-Tenn.), May 6, 1948.

The constitutionality of the Portal-to-Portal Act of 1947 has been sustained by the Courts of Appeals of the Sixth, Fourth, and Second Circuits and by more than 100 decisions of the Federal District Courts and state courts.[6]

[4] Kelly v. Ford, Bacon & Davis, Inc., 3 Cir., 162 F.2d 555, 558; Noonan v. Fruco Construction Co., 8 Cir., 140 F.2d 633, 635; Nieves v. Standard Dredging Corp., 1 Cir., 152 F.2d 719, 721; Laudadio v. White Construction Co., 2 Cir., 163 F.2d 383, 386, 387; Wage and Hour Interpretative Bulletin No. 5, Par. 12, December 2, 1938, revised November, 1939.

The view that employees engaged in the original construction of buildings or facilities are not within the coverage of the Fair Labor Standards Act, even if the building or facility, when completed, will be used to produce goods for commerce, is supported, we think, by the action of the Supreme Court in Murphy v. M. T. Reed, et al., 335 U.S. 865, 69 S. Ct. 105. In that case the Court of Appeals for the Fifth Circuit, 168 F.2d 257, had held that employees of a contractor under a cost-plus-a-fixed-fee contract for the original construction of a Navy camp for training construction battalions (Sea Bees) and a Naval Advance Depot at Gulfport, Mississippi, were not within the coverage of the Fair Labor Standards Act of 1938, and that certain other employees, performing work under a cost-plus-a-fixed-fee contract for the main-

tenance and operation of such facilities, were likewise not within the coverage of such Act, and reversed a decision of the District Court holding that both groups of employees were within the coverage of such Act. The Supreme Court granted certiorari and directed that the judgments below be vacated and the case remanded to the District Court with instructions to dismiss those causes of action involving solely construction work and to reconsider the remaining causes of action in the light of the decisions in the case of Kennedy v. Silas Mason Co., 334 U.S. 249, 68 S.Ct. 1031.

[5] Kelly v. Ford, Bacon & Davis, Inc., 3 Cir., 162 F.2d 555, 557; 1944–1945 Wage and Hour Manual, W. & H. Release No. G-162, May 15, 1941, p. 91.

[6] Seese v. Bethlehem Steel Co., 4 Cir., 168 F.2d 58. See, also, cases cited in 168 F.2d at page 61, Note 1, thereof; Rogers Cartage Co. v. Reynolds, 6 Cir., 166 F.2d 317, 320, 321; Fisch v. General Motors Corp., 6 Cir., 169 F.2d 266, 270, 273, certiorari denied 69 S.Ct. 405; Battaglia v. General Motors Corp., 2 Cir., 169 F.2d 254, certiorari denied 69 S.Ct. 236; Atallah v. B. H. Hubbert & Son, 4 Cir., 168 F.2d 993.

472

■ For the reasons clearly and fully stated by Circuit Judge Chase in Battaglia v. General Motors Corp., 2 Cir., 169 F.2d 254, Chief Judge Hicks in Fisch v. General Motors Corp., 6 Cir., 169 F.2d 266, and Chief Judge Parker in Seese v. Bethlehem Steel Co., 4 Cir., 168 F.2d 58, we hold the provisions of Part 2 of such Act to be within the constitutional powers of Congress.

■ We conclude that plaintiffs were not within the coverage of the Fair Labor Standards Act of 1938; and that the claims of plaintiffs, based on time preliminary to the time they reported to their foremen for productive work and postliminary to the time they ceased such work, were for activities not compensable either by contract or by custom or practice and were, therefore, activities not compensable under the provisions of subsections (a) and (b) of § 2, Part II of the Portal-to-Portal Act of 1947 and, therefore, the trial court had no jurisdiction of the action in so far as it was based on such claims.

■ With respect to any claims of plaintiffs based wholly on contract, since the claims were assigned to McDaniel for collection and not absolutely, none of the claims could be aggregated to make up the requisite jurisdictional amount,[7] and it is clear that no single claim equaled $3,000.

Affirmed.

[7] Willis v. E. I. du Pont de Nemours & Company, 10 Cir., 1948, 171 F.2d 51, and cases there cited; Woodside v. Beck-ham, 216 U.S. 117, 120, 121, 30 S.Ct. 367, 54 L.Ed. 408.