## MOSS et al. v. HAWAIIAN DREDGING CO. et al.

## LARSEN et al. v. FLOOD BROS. et al.
## No. 12571.

United States Court of Appeals
Ninth Circuit.

Jan. 31, 1951.

Gladstein, Andersen, Resner & Leonard, Herbert Resner, Richard Gladstein and Ewing Sibbett, all of San Francisco, Cal., for appellants.

H. G. Morison, Asst. Atty. Gen., Frank J. Hennessy, U. S. Atty., San Francisco, Cal., Edward H. Hickey, Marvin C. Taylor, Attys., Dept. of Justice, Washington, D.C., Antoinette E. Morgan, Asst. U. S. Atty., San Francisco, Cal., for appellees.

Gregory A. Harrison, Robert E. Burns, Richard Ernst, Brobeck, Phleger & Harrison, San Francisco, Cal., for Pacific Maritime Ass'n, as amicus curiae.

Before HEALY, ORR, and POPE, Circuit Judges.

POPE, Circuit Judge.

The appellants, some 1200 walking bosses and warehousemen employed in the longshore and stevedoring industry in the San Francisco Bay area, brought 32 actions against the appellees, their employers, to recover overtime compensation and liquidated damages claimed to be owing under § 16 of the Fair Labor Standards Act of 1938. 29 U.S.C.A. §§ 201–219. The cases were consolidated for trial.

The facts upon which the actions are predicated are that these workers were paid at an agreed hourly rate for a basic 30-hour workweek, consisting of the first six hours of work between 8 A.M. and 5:00 P.M. Mondays through Fridays. The same employment contracts provided that they should be paid "time and a half" for all work done outside this basic workweek. This included all work done after 5:00 P. M. and before 8:00 A.M., work done on Saturdays, Sundays and holidays, and work done after the first six hours of work between 8:00 A.M. and 5:00 P.M., Mondays through Fridays. This contract overtime pay was sometimes called "clock overtime", because applicable to certain hours during the day and week. In addition, special rates, even higher, were paid for handling dangerous or noxious cargo, or for work requiring special skill.

It was alleged in the complaints that the Fair Labor Standards Act required that overtime pay should be calculated on the basis of the average of the various rates of pay received and earned by plaintiffs during the first 40 hours of each week. This, said the employers, would be computing overtime on overtime. They asserted that the rates of pay were far in excess of those required by the Act. The minimum allowed by the Act permits 40 hours to be paid at straight time rate, and only requires overtime pay thereafter. But these employers, paying overtime at all times except the six hours mentioned, in each of the five days, Monday to Friday, a total of 30 hours, contended that they were more than meeting the Act's requirements.

The suits were instituted in 1945. When the cases came to trial in May, 1947, the Portal-to-Portal Act of 1947, 29 U.S.C.A. § 251 et seq., had become effective, and defendants were permitted to amend their answers to plead defenses under §§ 9 and 11 of the Act. The cases were then tried and submitted, but before they were decided, the Supreme Court on June 7, 1948, handed down its decision in Bay Ridge Co. v. Aaron, 334 U.S. 446, 68 S.Ct. 1186, 92 L. Ed. 1502. The effect of this decision was to uphold the plaintiff's contention as to how overtime should be computed, for it held that for hours worked after the first 40, pay should be one and one-half times

the regular rate, which "regular rate" must be determined by dividing the total compensation received by the total number of hours worked. The court then, on March 31, 1949, filed an opinion holding that defendants had successfully maintained their defenses under §§ 9 and 11 of the Portal-to-Portal Act. Thereafter Congress passed Public Law 177, approved July 20, 1949. The substance of the provisions of that Act were carried forward into portions of Public Law 393, of October 26, 1949, which make up the present form of what is popularly known as the Overtime-on-Overtime Act. These acts provided, in substance, that payment of "contract overtime", in the manner in which these appellants had been paid, satisfied the requirements of the Fair Labor Standards Act. Section 2 of Public Law 177, provided that "No employer shall be subject to any liability * * * (in any action or proceeding commenced prior to or on or after the date of the enactment of this Act), on account of the failure of said employer to pay an employee compensation for any period of overtime work performed prior to the date of enactment of this Act, if the compensation paid prior to such date for such work was at least equal to the compensation which would have been payable for such work had the amendment made by section 1 of this Act been in effect at the time of such payment." This is the section which made the amendments retroactive. Substantially the same provision is in § 16(e) of Public Law 393.

After Public Law 177 was passed, its provisions were set up as supplemental defenses, and thereafter, in a "supplemental opinion and findings", the court added to its previous holding, a finding that under this Act the plaintiffs' actions were barred.

The judgment denying the appellants' claims is therefore based upon two independent grounds: one the good faith defense under the Portal-to-Portal Act; the other the defense under the Overtime-on-Overtime Act. Since the judgment must be affirmed if either defense be sustained, it was stipulated by the parties, with the approval of the court, that the court should first hear argument upon those issues of the appeal raised by appellants' contention that the retroactive provisions of the Overtime-on-Overtime Act are unconstitutional.

The argument is that such retroactive enactment is void (1) as an attempt by Congress to exercise judicial power in violation of Article III of the Constitution,[1] and (2) as a deprivation of property without due process of law in violation of the Fifth Amendment.

These are the same two grounds of invalidity upon which the retroactive features of the Portal-to-Portal Act were attacked in Seese v. Bethlehem Steel Co., 4 cir., 168 F.2d 58. As well pointed out in that case, we have no occasion to consider the contention that the questioned enactment involved the improper exercise of judicial power, for if the provision is not in violation of the Fifth Amendment, it is no more outside the proper field of Congressional legislation than other laws which contain retroactive features.[2] As we view it, the sole question here is whether the challenged provisions operate to deprive appellants of property without due process of law.

Appellants say that when they did the work for which additional compensation is here sought they acquired rights to overtime compensation under the Fair Labor Standards Act, the measure of which overtime compensation was required to be as

1. "The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."

2. "It is true that the effect of the act is to take away rights held by the courts to arise under a statute as they have interpreted it; but this is done, not by the exercise of judicial but of legislative power. * * * This does not in any manner affect adjudications already made, nor does it attempt to direct the courts in the exercise of judicial power. All that it does is to define rights, i.e., to amend or limit the effect of a prior statute so as to take away a cause of action given by it." Seese v. Bethlehem Steel Co., 4 Cir., 168 F.2d 58, 62.

stated in the Bay Ridge decision. These, they say, were vested rights, contractual in nature. They cite such cases as Coombes v. Getz, 285 U.S. 434, 52 S.Ct. 435, 76 L.Ed. 866, and Ettor v. City of Tacoma, 228 U.S. 148, 33 S.Ct. 428, 57 L.Ed. 773, in support of their contention that the overtime provisions of the Fair Labor Standards Act, as they stood when the work was done, became part and parcel of their employment contracts, and hence immune to retroactive legislation modifying those provisions.

This is the line of argument presented in challenging the constitutionality of the retroactive provisions of the Portal-to-Portal Act. Appellees say that the decisions, such as that of this court in Lassiter v. Guy F. Atkinson Co., 176 F.2d 984, upholding the Portal-to-Portal provisions,[3] are controlling here. Plainly our decision here must depend upon whether this case may be distinguished from those just mentioned.

Appellants argue that the Portal-to-Portal cases present a very different situation from that now before us. They say that the result of the Supreme Court decision in the Anderson v. Mt. Clemens Pottery Co. case, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515, was that many employees were seeking pay for activities which theretofore had never been regarded as requiring compensation. These involved such things as changing clothes, walking in the plant to place of work, and the like, none of which had been considered work activity. Hence the right to collect for these things was properly called a windfall. Here, on the other hand, the claim made is for real work, and for doing the things appellants were hired to do and for which they were intended to be paid. Therefore, since the question is merely one of determining from the Fair Labor Standards Act, what amount should be paid for that work, the decision in the Bay Ridge case did not bring about any similar windfall. Furthermore, it is said the suits against which the retroactive provision of the Portal-to-Portal Act was directed, were, on the whole, started after the Mt. Clemens decision, thus demonstrating the fact of a windfall. Here, on the other hand, these particular suits were filed in 1945, and sought recovery for a three year period preceding.

What is here sought, it is said, is no windfall result of a surprise decision in the Bay Ridge case. Attention is called to a letter written by the Wage-Hour Administrator on October 15, 1943, in line with what appellants allege in their complaints, that the "regular rate" upon which overtime must be computed must be determined by dividing total earnings by total hours. So appellants say their actions cannot be called attempts to recover a windfall.

Finally, it is said, the claims which were made on industry as a result of the Mt. Clemens decision were so great, and so numerous, as to create a national economic emergency. Here the claims are limited to those of walking bosses and terminal employees, and if every possible claim of persons affected by the Bay Ridge decision were considered, the total could not exceed two million dollars. Although the Senate Report on the bill which became Public

3. The other decisions, in accord, from nine circuits, are the following: Manosky v. Bethlehem-Hingham Shipyard, Inc., 1 cir., 177 F.2d 529; Battaglia v. General Motors Corp., 2 cir., 169 F.2d 254, certiorari denied 335 U.S. 887, 69 S.Ct. 236, 93 L.Ed. 425; Darr v. Mutual Life Insurance Co., 2 Cir., 169 F.2d 262, certiorari denied 335 U.S. 871, 69 S.Ct. 166, 93 L.Ed. 415; Thomas v. Carnegie-Illinois Steel Corp., 3 cir., 174 F.2d 711; Seese v. Bethlehem Steel Co., 4 cir., 168 F.2d 58; Atallah v. B. H. Hubbert & Son, Inc., 4 cir., 168 F.2d 993, certiorari denied Cingrigrani v. B. H. Hubbert & Son, 335 U.S. 868, 69 S.Ct. 138, 93 L.Ed. 412; Fisch v. General Motors Corp., 6 cir., 169 F.2d 266, certiorari denied 335 U.S. 902, 69 S.Ct. 405, 93 L.Ed. 436; Newsom v. E. I. Du Pont De Nemours & Co., 6 cir., 173 F.2d 856, certiorari denied 338 U.S. 824, 70 S.Ct. 70; Rogers Cartage Co. v. Reynolds, 6 cir., 166 F.2d 317; Busch v. Wright Aeronautical Corp., 6 cir., 174 F.2d 322; Lee v. Hercules Powder Co., 7 cir., 171 F.2d 950; Bumpus v. Remington Arms Co., 8 cir., 183 F.2d 507; Role v. J. Neils Lumber Co., 9 cir., 171 F.2d 706; Potter v. Kaiser Co., 9 cir., 171 F.2d 705; Adkins v. E. I. Du Pont De Nemours & Co., 10 cir., 176 F.2d 661; McDaniel v. Brown & Root, Inc., 10 cir., 172 F.2d 466.

Law 177 referred to estimates of potential liability ranging from $10,000,000, to $300,-000,000, we are told that these are inflated figures not warranted by the facts.

We think that notwithstanding these differences, the reasons which commanded an approval of the Portal-to-Portal Act, compel a like conclusion here. The two situations dealt with in these acts were not identical, but we think that in substance they were the same. The claims dealt with in the Portal-to-Portal Act w re for activity not previously considered work activity. This was because of the previous uncertainty as to what constituted the "workweek". Here the uncertainty concerned the definition of the term "regular rate".[4] The decision in the Mt. Clemens case that the activities there considered must be counted in calculating the workweek paralleled in every respect the decision in the Bay Ridge case as to how the regular rate must be ascertained. The effect in each case was to require the court's interpretation to be read as a part of the Act. "When the Fair Labor Standards Act was interpreted by the Supreme Court as requiring computation in the workweek of time consumed in walking to work and other preliminary activities, this was just as though the original act contained express provision to that effect; * * *." Seese v. Bethlehem Steel Co., supra, 168 F.2d at page 62.

As for the circumstance that generally the result reached in the Mt. Clemens decision was unexpected, while the Bay Ridge decision was anticipated by the institution of these actions, and by the Administrator's 1943 letter, we think those are matters which may properly be considered by the court in determining whether the defenses afforded by these acts apply in a particular case, but we cannot perceive why a decision as to the validity of the Acts themselves should turn on this circumstance. Thus the employer claiming a defense under § 9 of the Portal-to-Portal Act must prove that he acted "in good faith in conformity with and in reliance on any administrative regulation, order, ruling," etc. And § 1 of Public Law 177 refers to a "rate established in good faith." To argue that the appellee employers here lacked the requisite good faith is no more than an argument that the court below made a wrong finding.[5] We think it not significant with respect to the validity of the Act here in question.

The argument that the Overtime-on-Overtime Act was not justified by an emergency comparable to that which prompted the Portal-to-Portal enactment raises the familiar question as to whether Congress, or the courts, shall have the say as to the need for the questioned legislation. The senate Report which brought forward and set forth the committee's views as to the need for this particular provision stated: "Indeed, in every important respect the overtime-on-overtime claims closely parallel the portal-to-portal claims. In our opinion, the factual and legal findings recited in the Portal-to-Portal Act are equally applicable here, and the situation requires the same expeditious and equitable treatment by Congress." (Senate Report No. 402, 81st Congress, 1st Session.)[6]

█ It is true that recitals in legislation are not always conclusive. In a proper case the courts can examine into the facts to see whether Congress has transgressed

---

4. "We believe that the overtime-on-overtime claims cannot be distinguished from the claims covered by the Portal-to-Portal Act. In both cases the claims arose under the Fair Labor Standards Act and would not have existed were it not for that law; in both cases, the claims arose by reason of the failure of Congress to define a basic term in that act—the 'workweek' in the portal-to-portal situation and 'regular rate' in this overtime-on-overtime situation; * * *." Report No. 402, Senate, 81st Congress, 1st Session, accompanying H.R. 858.

5. It was held in Lassiter v. Guy F. Atkinson Co., supra, that ordinarily whether the employer acted in good faith was a question of fact for the trial court.

6. The Overtime-on-Overtime Act did not contain, as did the Portal-to-Portal Act, a recital of Congressional findings. That such findings may be evidenced by committee reports, as in this case, see Everard's Breweries v. Day, 265 U.S. 545, 561, 44 S.Ct. 628, 68 L.Ed. 1174.

the limits of its powers. Chastleton Corp. v. Sinclair, 264 U.S. 543, 44 S.Ct. 405, 68 L.Ed. 841. But here we have a situation where the difference between the emergency which prompted the Portal-to-Portal Act, and the conditions in industry which led to Public Law 177, is one of degree only. We hold that the mere fact that the industrial crisis which was created by the Mt. Clemens decision extended to practically every kind of business and occupation, while the emergency arising out of the Bay Ridge case was limited to a few sectors of industry, is insufficient to withdraw from Congress the right to appraise the economic consequences and to find them sufficient to warrant the Congressional action. United States v. Darby, 312 U.S. 100, 657, 61 S. Ct. 451, 85 L.Ed. 609; Overnight Motor Co. v. Missel, 316 U.S. 572, 577, 62 S.Ct. 1216, 86 L.Ed. 1682; Bunting v. State of Oregon, 243 U.S. 426, 437, 37 S.Ct. 435, 61 L.Ed. 830.

The decisions upholding the Portal-to-Portal Act, (supra, note 3), have reached such general unanimity that we think it may be said that what they held is now beyond further question. Those decisions establish that if it may be said that private rights, contractual in nature, arose from the overtime provisions of the Fair Labor Standards Act, yet the character and quality of such rights are such that they must yield to the sovereign power to regulate commerce by legislation such as that of the Portal-to-Portal Act. They authoritatively held that the Fair Labor Standards Act must be so construed that if its overtime provisions were incorporated into private contracts, those contracts had "a congenital infirmity", for the parties to a contract so constituted could not "remove their transactions from the reach of dominant constitutional power". Norman v. B. & O. R. Co., 294 U.S. 240, 55 S.Ct. 407, 416, 79 L.Ed. 885. Public Law 177 dealt with other consequences of the same Fair Labor Standards Act thus interpreted in these earlier decisions. Judge Parker, speaking for the court in Seese v. Bethlehem Steel Co., supra, said of the Act: 168 F.2d at page 64. "Looked at in another way, all that Congress has done by the leg-

islation here under consideration is to validate the contracts and agreements between employer and employee which were invalid under the Fair Labor Standards Act by reason of the interpretation placed by the Supreme Court upon that act; and the authority of the legislative body to validate voluntary transactions which at the time they were entered into were by statute invalid or illegal has been repeatedly upheld. [cases cited] In other words, the contracts of employment which contemplated that no payment should be made for the portal to portal activities but that these were to be compensated by the agreed wage, were invalid only because of the provisions of the Fair Labor Standards Act. There was nothing in law or in reason which forbade Congress to give validity to these contracts retroactively, just as the invalid pledge of securities by National Banking Associations was validated by retroactive legislation in the case of McNair v. Knott, * * * [302 U.S. 369, 372, 58 S.Ct. 245, 82 L.Ed. 307]."

 We find no reason for distinguishing this case from that one, and the other cases in accord with it. We hold the challenged section valid.

The judgment is affirmed.