**BUMPUS et al. v. REMINGTON ARMS CO., Inc.**

No. 4537.

District Court, W. D. Missouri, W. D.

Dec. 10, 1947.

Henry A. Riederer and Fred J. Freel, both of Kansas City, Mo., for plaintiffs.

Samuel W. Sawyer and Horace F. Blackwell, Jr. (of Lathrop, Crane, Sawyer, Woodson & Righter), all of Kansas City, Mo., for defendant.

REEVES, District Judge.

Supplementing the motion to dismiss the first amended complaint the defendant has added a motion to strike and also a motion for a more definite statement.

In the view now held it is only necessary to consider the motion to dismiss.

This action followed the decision in Anderson v. Mt. Clemens Pottery Co., 328 U. S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515. The decision in that case laid the foundation for this suit and many similar suits. While this suit was pending Congress amended the Fair Labor Standards Act of 1938 by the so-called Portal-to-Portal Act of 1947, 29 U.S.C.A. §§ 216, 251 et seq. The Congress apparently sought to mitigate the damage wrought by the Mt. Clemens Pottery Co. decision, supra. The result of the enactment was that all claims and penalties, whether civil or criminal, under Section 216, Title 29 U.S.C.A., relating to the Fair Labor Standards could not be maintained or enforced in court except upon a showing that the compensation claimed was provided for by an express provision of a written or non-written contract in effect at the time of such activity or by a custom or practice likewise in effect at the time of such activity.

Pursuant to the enactment of this amendment to the Fair Labor Standards Act, the plaintiff filed an amended complaint and subsequently amended the amended complaint by interlineations. The amended complaint undertook to meet the requirements of the Portal-to-Portal Act with appropriate averments that the overtime sued for was warranted by an express provision of a written or unwritten contract, or by custom. These averments were thought to be sufficient to state a cause of action under the new legislation and to maintain the jurisdiction of the court.

The plaintiffs in their amendment by interlineation set forth: "Some of the provisions of the express contracts referred to herein * * * as follows: * * *." In the matter thus quoted it appeared definitely and clearly that it was the intention of all the parties to invoke and make applicable the provisions of the Fair Labor Standards Act of 1938. Note this language: "Insofar as the Company is concerned all employees unless specifically exempt under one of the exemptions later referred to should be considered as being subject to this Act."

It is not complained here that the plaintiffs were under any of the exemptions mentioned in the contract, and, therefore, it must be considered that the Fair Labor Standards Act governed the relations of the parties in this case. The company accepted the definitions issued by the administration with respect to the Fair Labor Standards Act as to employee-activity as follows: "Hours Worked—For the purpose of these regulations the term 'hours worked' shall include all time during which an employee is required by this employer to be on duty or to be on the employer's premises or to be at a prescribed work-place."

This was followed by the following:

" 'Hours Worked' will continue to be interpreted as at present, i.e., actual working time considered. * * *."

"An employee is considered to be working if he is required to be on duty."

Upon these facts it is the contention of the plaintiffs that they are entitled to overtime compensation for time used in preparing for the day's work and for time con-

sumed incidental to the day's work at the end of the day. Plaintiffs believe that this time was compensable under the decision in Anderson v. Mt. Clemens Pottery Co., supra, and that the Portal-to-Portal Act did not take away the jurisdiction of the court. Moreover, it is contended by the plaintiffs that, if the Congress undertook to take away an accrued right, it was an invasion of the judicial prerogative and that the suit, having been filed before enactment of the law, the rights of the plaintiffs were invulnerable as against congressional action. These will be noticed.

1. The arguments that the defendant was not engaged in commerce for the reason that the products manufactured belonged to the government and were delivered to the government should be disregarded for the reason that, by clear and unequivocal contract and agreement, the defendant accepted and even invoked the application of the Fair Labor Standards Act. Moreover, there are decisions to the effect that the manufacturer of ordnance for the government under identical circumstances would be within the provisions of the interstate commerce law.

 2. The second question obtruding itself is whether plaintiffs had acquired rights which became so vested that the Congress could not take them away. In the case of United States ex rel. Rodriguez v. Weekly Publications, Inc., et al., 2 Cir., 144 F.2d 186, 188, the Court of Appeals, Second Circuit, said with respect to an informer suit, where the government under a recent congressional amendment ousted the informer by its own intervention: "The relator acquired no vested right prior to the date of the amendment. His privilege of conducting the suit on behalf of the United States and sharing in the proceeds of any judgment recovered, was an award of statutory creation which, prior to final judgment, was wholly within the control of Congress." Many cases were cited in support of this proposition.

Section 216, Title 29, relating to the subject of Fair Labor Standards, purely and wholly creates a right of action and one that might be abolished or annulled at the will of Congress.

 3. Another question much mooted but clearly decided by an unbroken line of authorities, is whether the Congress would have a right to withdraw from the district court jurisdiction to adjudicate the statutory action provided for by said Section 216. The basic rule is announced in 35 C.J.S., Federal Courts, § 4, as follows: "Congress has power to prescribe and define the jurisdiction of inferior courts of the United States; and it may, in its discretion, give, grant, withhold, control, regulate, enlarge, limit, restrict, curtail, withdraw, or take away, the jurisdiction of such courts, even with respect to pending suits, * * *."

The same authority, 36 C.J.S., Federal Courts, § 308, states the rule: "The general rule * * * that the jurisdiction of federal courts other than the supreme court may be changed or taken away at the pleasure of congress, applies to district courts, and, if jurisdiction as to any matter is withdrawn without a saving clause, all pending cases, although cognizable under the withdrawn jurisdiction when commenced, must fall."

In the very early case of Ex parte McCardle, 7 Wall. 506, 74 U.S. 506, loc. cit. 514, 19 L.Ed. 264, the court said: "On the other hand, the general rule, supported by the best elementary writers, is, that 'when an act of the legislature is repealed, it must be considered, except as to transactions past and closed, as if it never existed.' And the effect of repealing acts upon suits under acts repealed, has been determined by the adjudications of this court. The subject was fully considered in Norris v. Crocker (13 Howard, 429, 14 L.Ed. 210), and more recently in Insurance Co. v. Ritchie (5 Wall. 541, 18 L.Ed. 540). In both of these cases it was held that no judgment could be rendered in a suit after the repeal of the act under which it was brought and prosecuted." See also Levering & Garrigues Co. v. Morrin, 2 Cir., 71 F.2d 284, Metropolitan Life Ins. Co. v. United States, 6 Cir., 107 F.2d 311, Kuligowski v. Hart, D.C., 43 F.Supp. 207.

The foregoing authorities also dispose of the question of the constitutional validity of the Portal-to-Portal Act. Moreover, one of my associates, Honorable Albert A.

Ridge, in Sadler v. W. S. Dickey Clay Mfg. Co., D.C., 73 F.Supp. 690, upheld the constitutionality of the act.

■ 4. The only remaining question in the case is whether a contract or custom entitled the plaintiffs to assert a claim for overtime notwithstanding the provisions of the Portal-to-Portal Act. Apparently very able counsel for the plaintiffs undertook to conform to the exceptions provided in the Portal-to-Portal Act and set forth, as above indicated, pertinent provisions of an express contract under which the plaintiffs engaged in their activities, and for which they claimed overtime compensation.

In addition to the quotations above set out, the contract quoted by plaintiffs contained the following: "Hours of Work: Working hour schedules are posted in each Area and vary slightly to suit the needs of the particular department."

While copies of these schedules were not presented or incorporated in the complaint yet the inference is strong that the plaintiffs were compensated in accordance with these posted schedules. Such matter became a part of the contract pleaded by the plaintiffs. Such schedules were held out as fixing the time of the employees' compensable activities. Moreover, there is no room for doubt as to the compensable activity of the plaintiffs in the language, " 'Hours Worked' will continue to be interpreted as at present, i.e., *actual working time considered.*" (Italics mine.) This interpretation can have only one meaning, and that is, that the activity of the employee was only compensable from "whistle to whistle." It could not reasonably be interpreted to include preparations that the employee would make for his day's work, nor such preparations as might be made at the end of the day for the return of such employee from the day's activities. This interpretation is reinforced by a sentence which follows: "An employee is considered to be working if he is required to be on duty." This was an exception in favor of some one who may not have been active but to have had a duty to perform, and was "required to be on duty."

Other portions of the contract support the above. The contract quoted by the plaintiffs does not yield the interpretation that the plaintiffs were entitled to compensation for preliminary activities or postliminary activities.

■ 5. The court is mindful of the averments that such compensation is granted because of custom and practice. However, when it appeared that there was an express contract between the defendant and its employees relative to their compensable activities, then any custom or practice to the contrary would be superseded and the express contract would control. Since an interpretation of the contract pleaded does not disclose any basis for compensation as asserted by plaintiffs, their complaint fails to state a cause of action cognizable in this court, and the complaint should be dismissed for want of jurisdiction. It will be so ordered.