**BUMPUS et al. v. REMINGTON ARMS CO., Inc**

No. 13764.

United States Court of Appeals Eighth Circuit.

July 6, 1950.

Rehearing Denied Oct. 27, 1950.

Otto Schmid, Kansas City, Mo., Robert L. Robertson, Henry A. Riederer, and Fred J. Freel, all of Kansas City, Mo., on the brief, for appellants.

Horace F. Blackwell, Jr., Kansas City, Mo., W. B. DeRiemer, Wilmington, Del., and Samuel W. Sawyer, Kansas City, Mo., on the brief, for appellee.

Before GARDNER, Chief Judge, and RIDDICK and STONE, Circuit Judges.

STONE, Circuit Judge.

This is an action for overtime wages by appellant "and others similarly situated" who are or have been in the employment of defendant in its business of manufacturing ammunition for the United States at Lake City, Missouri. To a first amended petition which was further amended by interlineation, a motion to dismiss, to strike and for more definite statement was filed. Upon this motion, the action was dismissed, D.C., 74 F.Supp. 788, D.C., 77 F.Supp. 94, and plaintiff appeals.[1]

This action was brought under section 16(b) of the Fair Labor Standards Act, 29 U.S.C.A. § 216(b), on January 21, 1947, for time spent in reaching and leaving work "in order to change into and from the clothing required by the defendant to be worn at their work, and to prepare their work and machinery for actual operation, to obtain and turn in brass, tools, equip-

ment, guns, ammunition and other materials and equipment incidental to their employment at such time and place." Also, for an equal amount as liquidated damages, for a reasonable attorney's fee, and for costs.

On May 14, 1947, the Portal to Portal Act of 1947, 61 Stat. 84, 29 U.S.C.A. § 251 et seq., became effective. Thereafter, plaintiff amended her petition with the purpose of bringing her action within the exceptions stated in section 2 of that Act, 29 U.S.C.A. § 252, by pleading a contract and a custom, and within Executive Order No. 9240, 7 R.R. 7159 amended 7 R.R. 7419, 40 U.S.C.A. § 326 note.

The trial court held that the Fair Labor Standards Act applied. This holding is sustained by the decision in the Powell and companion cases. The grounds upon which the court dismissed this action were (a) that the Portal to Portal Act of May 14, 1947, was valid; and (b) that plaintiff had not brought herself within any of the exceptions in that Act, namely, (1) a written or unwritten contract in effect at the time of such activity, § 252(a) (1); or (2) a custom or practice in effect at such time not inconsistent with a written or unwritten contract, § 252(a) (2).

The broad issues presented by appellant on this appeal are: (I) invalidity of Portal to Portal Act as applied to her; and (II) the amended petition states grounds for recovery under Section 2 of that Act.

I. Validity of Portal to Portal Act.

The challenges to validity of the Act are (1) because an invasion of Judicial powers, and (2) because violative of the Fifth Amendment. The latter challenge is based upon two contentions, namely, that the Act denies due process because it is arbitrary, unreasonable, capricious and oppressive; and that it deprives appellant of property without due process.

---

[1] Disposition of this appeal has been halted awaiting decision by the Supreme Court of three cases before it involving the basic controversy as to whether the Fair Labor Standards Act applies to these private contractor cost-plus contracts for production of war supplies.

These cases were decided May 8, 1950, 70 S.Ct. 755, by one opinion (Powell v. United States Cartridge Company (this Circuit), Aaron v. Ford, Bacon & Davis, Inc. (this Circuit), and Creel v. Lone Star Defense Corporation (5th Circuit).

The validity of the Act has been determined by many decisions in the Courts of Appeals and in the District Courts.[2] The Courts of Appeals include the First, Second, Third, Fourth, Sixth, Seventh, Ninth and Tenth Circuits.[3] Certiorari has been denied repeatedly.[3] In all instances, the validity of the Act has been upheld, although attacked on all of the grounds presented here as well as others. As stated by Chief Judge Magruder in the Manosky case, 177 F.2d at page 532, " * * * it may now be taken as settled that § 2(a) is constitutional." [4]

In this state of the decisions, it is pointless to do more than say we have examined carefully the issues presented here, the authorities cited by appellant, and the herein cited Courts of Appeals decisions, and that we are in agreement with the reasonings in these Courts of Appeals cases in our determination that the Act is impervious to these attacks of appellant.

## II. Portal to Portal Act.

After stating generally the character of services covered by the suit, the amended petition alleged that all such "was to be paid and compensated for by defendant by reason of and under the terms of the express provisions of the contract or agreement hereinbefore referred to, as well as other agreements or contracts executed for the benefit of plaintiffs, all of which were in full force and effect at the time of such work and activities; and that at such time and for a long time prior thereto there was and had been in full force and effect a custom or practice at defendant's establishment consistent with the contracts referred

2. For list of cases see Thomas v. Carnegie-Illinois Steel Corp., 3 Cir., 174 F. 2d 711, 712 and 713 footnotes 1, 2 & 3 and an elaborate note in 3 A.L.R. 1102–1122.

3. First Circuit. Manosky v. Bethlehem-Hingham Shipyard, Inc., 177 F.2d 529, 532.

Second Circuit. Battaglia v. General Motors Corp., 169 F.2d 254, 257, certiorari denied 335 U.S. 887, 69 S.Ct. 236, 93 L.Ed. 425; Darr v. Mutual Life Ins. Co., 169 F.2d 262, 266, certiorari denied 335 U.S. 871, 69 S.Ct. 166, 93 L.Ed. 415.

Third Circuit. Thomas v. Carnegie-Illinois Steel Corp., 174 F.2d 711, 712.

Fourth Circuit. Seese v. Bethlehem Steel Co., 168 F.2d 58; Atallah v. B. H. Hubbert & Son, Inc., 168 F.2d 993, certiorari denied sub nom. Cingrigani v. B. H. Hubbert & Son, Inc., 335 U.S. 868, 69 S.Ct. 138, 93 L.Ed. 412.

Sixth Circuit. Rogers Cartage Co. v. Reynolds, 166 F.2d 317, 320; Fisch v. General Motors Corp., 169 F.2d 266, 270, cert. den. 335 U.S. 902, 69 S. Ct. 405, 93 L.Ed. 436; Newsom v. E. I. Du Pont De Nemours & Co., 173 F.2d 856, 860, certiorari denied 338 U. S. 824, 70 S.Ct. 70; Busch v. Wright Aeronautical Corp., 174 F.2d 322.

Seventh Circuit. Lee v. Hercules Powder Co., 171 F.2d 950, 951.

Ninth Circuit. Potter v. Kaiser Co., 171 F.2d 705; Role v. J. Neils Lumber Co., 171 F.2d 706; Lassiter v. Guy F. Atkinson Co., 176 F.2d 984, 986.

Tenth Circuit. McDaniel v. Brown

& Root, 172 F.2d 466, 471; AdKins v. E. I. Du Pont De Nemours & Co., 176 F.2d 661, 663, certiorari denied 338 U.S. 895, 70 S.Ct. 234.

4. In the Thomas case, Judge Goodrich, 174 F.2d at page 712–713, wrote:

"There have been forty-two reported District Court opinions discussing and upholding constitutionality, if our count is accurate, and at least eighty-one additional decisions have reached the same result. The matter has also come, by this time, to our brethren in the Second, Fourth, Sixth, Seventh, Ninth and Tenth Circuits. Eight of the cases in the first three Circuits mentioned were made the subjects of petitions for certiorari and in each case certiorari was denied.

"Up to now every decision has upheld the constitutionality of the statute. This unanimity of result represents as accurate an expression of the views of the federal judiciary as it is possible to obtain. In addition to this unanimity among District Courts and Courts of Appeals there is the uniform refusal of certiorari by the Supreme Court. We have been taught that a denial of certiorari does not mean Supreme Court approval of a Court of Appeals position. But in this particular situation where there have been eight denials involving the same constitutional question, we think that the series of denials is not without an implicit significance with regard to the Supreme Court's attitude upon the question involved."

to above providing for full payment and compensation to the plaintiff and such other similarly situated employees for all of the time, work, exertion and activities mentioned herein; and by and under which said custom or practice defendant had for a long time prior to and during the period of the contracts mentioned herein customarily and habitually paid employees similarly situated for all of the time, work, exertion and activities mentioned herein."

These quoted allegations are followed by: "Some of the provisions of the express contracts referred to herein were as follows * * *" The matters set forth are quotations from a contract of November 20, 1940 (with amendments) between appellee and the United States, from "Information for Employees" published by appellee in 1941, and from "Service Manual" issued by appellee in 1941.

Attached to the motion to dismiss, as an exhibit, was the contract of November 20, 1940, and twelve supplemental contracts. The master contract (omitting formal provisions) and extracts from the supplemental contracts are in this printed record by stipulation of the parties.

■ Whether the amended petition stated a cause of action under the Act is a matter of well pleaded facts bringing appellant within one of the exceptions set forth in § 2(a) and (b), 29 U.S.C.A. § 252(a) and (b). These exceptions cover activities compensable either by an express provision of a written or non-written contract between the employee (or his representative) and the employer, or a custom or practice in effect not inconsistent with such contract.

The trial court determined (1) that the terms and provisions of any custom or practice had not been properly pleaded; (2) that any custom or practice was superseded by an express contract; (3) that such contract did not provide for compensation for the services pleaded; and (4) that Executive Order 9240 limited instead of creating a cause of action.

(1) A custom or practice was pleaded as follows: "That at such time and for a long time prior thereto there was and had been in full force and effect a custom or practice at defendant's establishment consistent with the contracts referred to above providing for full payment and compensation to the plaintiff and such other similarly situated employees for all of the time, work, exertion and activities mentioned herein; and by and under which said custom or practice defendant had for a long time prior to and during the period of the contracts mentioned herein customarily and habitually paid employees similarly situated for all of the time, work, exertion and activities mentioned herein." We think this quoted portion of the amended petition sufficiently pleaded a custom or practice.

(2) and (3) Whether a custom or practice was superseded or replaced by contract depends upon whether such custom or practice was or was "not inconsistent", 29 U.S.C.A. § 252(a) (2), with the contract. As the contract provisions relied on are set forth in the amended petition, this matter of consistency is presented by the pleading and must be examined to determine whether the pleaded custom or practice is available as a basis for recovery. Since the answer as to whether such services are or are not consistent with the contract pleaded is to be sought in a comparison of such services with the provisions of the contract, we consider together the second and third bases of the trial court's action.

Hereinbefore, we have quoted the allegations describing the services for which recovery is sought. The master contract of November 20, 1940, with supplemental contracts was between the Government and the contractor. It contained provisions regarding employees of the contractor. Those provisions pleaded by appellant are set forth in the footnote.[5] Another part

---

5. " '2. Upon the completion of the work under Titles I and II hereof, the contractor, shall, acting as an independent contractor, proceed to operate the Plant for the manufacture of Small Arms Ammunition of the types and in the quantities set forth in this Article III-A.' (Title III, Article III-A. Par. 2, page 8).

of this contract provided that certain set-forth portions of the Walsh-Healey Act, 41 U.S.C.A. § 35 et seq., should apply [6] and that such portions should be posted in a "prominent and readily accessible place." This master contract manifests concern for and requires these broad protections of employees, but it affords no help in determining the vital issue here, namely, the beginning and the ending of the normal work day. In this situation, we are relieved of any need to consider whether or not provisions for the benefit of employees

in a contract between the Government and the employer comply with the Portal to Portal Act statement that the contract be "between such employee, his agent, or collective-bargaining representative and his employer", 29 U.S.C.A. § 252(a) (1, 2).

No particular specific contract with the employees is in the record, but certain regulations governing the employment and work are set forth in the amended petition as from "Information for Employees" [7] published by appellee in 1941 and from a "Service Manual" [8] issued by appellee in

---

"(b) 'Procure all necessary permits and licenses whenever obtainable; obey and abide by all applicable laws, regulations, ordinances and other rules of the United States of America, of the State, Territory or sub-division thereof wherein the work is done, or any other duly constituted public authority.' (Par. 4-b) Title IV. Page 13.

"(e) '* * * It is recognized that in transferring men from their regular positions to the Plant, it may be necessary to make some increase in their remuneration, which shall be subject to the approval of the Contracting Officer.' (Article V-A. Par. 1(e) Page 15.)

"(j) 'Such portion of the transportation, traveling and hotel expenses of engineer and other employees of the contractor as is actually incurred in connection with this work; * * * It is agreed that all allowances of cost under this item shall conform to and not exceed the ordinary allowances authorized by the Contractor for its employees in the normal conduct of its business.' (Par 1(j) Article V-A page 16).

"(m) 'Extra compensation to employees. * * * In the payment of extra compensation and in the making of expenditures pursuant to or in the maintenance of welfare or other plans for the benefit of employees at said Plant, the Government shall be chargeable therefor insofar as the same are consistent with the contractor's general employee relation policies throughout its organization * * * it being intended that the employees at said Plant shall be treated no less favorably than employees at other plants of the Contractor. (Par. 1(m) pages 16–17 Article V-A)."

6. The only parts, by any possibility, pertinent here refer to minimum wage (where the Secretary of Labor has

made determinations), to overtime for more than forty hours weekly, to employment of minors, and to convict labor.

7. "Overtime Payment: Compensation at the rate of one and one-half times the regular hour rate is paid for all time worked in excess of 40 hours in any one pay week, for time worked in excess of 8 consecutive hours, and for time worked on certain specified holidays, although overtime will be paid only once for extra time worked. (Your Foreman will explain the details of overtime payment to you.) (Information for Employees v. Wages, Page 12.)

"Hours of Work: Working hour schedules are posted in each Area and vary slightly to suit the needs of the particular department.

"Since the nature of our work is such that practically all operations will be continuous (the plant may operate 7 days a week depending on the requirements of our Government) and each day is divided into three 8 hour shifts. A shift schedule for your area will be given to you.

"On some jobs employees work days only. On these jobs the hours of work in general are 8:00 A.M. to 4:30 P.M.

"It is very important that you punch your time card immediately upon entering the plant and likewise at the end of the shift. (Information for Employees, VI, Hours and Attendance, Page 14.)"

8. "Section V—Fair Labor Standards Act of 1938 Introduction. The wage and hour provisions of the Act apply to each employee engaged in—

(a) Interstate trade, transportation, communication, or finance.

(b) Handling, mining, transporting, in any manner working on or in any occupation necessary to the production

1941. The regulations represent terms of contract of employment of appellant by appellee. The pertinent portions thereof (from footnotes 7 and 8) are as follows:

"Working hour schedules are posted in each Area and vary slightly to suit the needs of the particular department."

"It is very important that you punch your time card immediately upon entering the plant and likewise at the end of the shift."

"The Administration has issued the following definitions with respect to the terms—

" 'Hours Worked—For the purpose of these regulations the term "hours worked" shall include all time during which an employee is required by this employer to be on duty or to be on the employer's premises or to be at a prescribed work-place.'

" 'Hours Worked' will continue to be interpreted as at present, i. e., actual working time considered. Payments for vacation, disability wage benefits allowance, payment in lieu of notice, allowance for attending military camps, workmen's compensation, overtime allowance, etc. are not to be considered as 'hours worked.'

"An employee is considered to be working if he is required to be on duty."

■ The definitions that "Hours Worked" include time required "to be on duty or to be on the employer's premises or to be at a prescribed workplace" or "to be on duty" are harmonious and intended to apply to different situations. Such definitions are valid, absent any showing of re-

of, goods which move in interstate commerce.

"Insofar as the administration of the Fair Labor Standards Act is concerned, the policy has been established under which we are to assume that all employees at our plant are subject to the provisions of the Act, regardless of whether they are engaged directly in production, or whether in their occupation any question might arise with respect to engagement in Interstate Commerce. By this is meant: for example, such employees as guards, maintenance men, clerks, messengers, etc., are to be considered as coming within the provisions of the law in the same manner as employees directly engaged in production.

"Insofar as the Company is concerned all employees unless specifically exempt under one of the exemptions later referred to should be considered as being subject to this Act. (Item 501, Remington Lake City Ordinance Plant Service Manual.)

"Section V.—Fair Labor Standards Act of 1938.

"Definition of 'Hours Worked, Work Day and Work Week.'

"The Administration has issued the following definition with respect to the terms—

" 'Hours Worked—For the purpose of these regulations the term "hours worked" shall include all time during which an employee is required by this employer to be on duty or to be on the employer's premises or to be at a prescribed work-place.'

" 'Hours Worked' will continue to be interpreted as at present, i. e., actual working time considered. Payments for vacation, disability wage benefits allowance, payment in lieu of notice, allowance for attending military camps, workmen's compensation, overtime allowance, etc. are not to be considered as 'hours worked'.

"An employee is considered to be working if he is required to be on duty.

"Attendance at training programs need not be considered as working provided that such attendance meets the following criteria:

1. Attendance on the part of the employee is in fact voluntary. No training program shall be considered voluntary if a condition of the employe's continued employment in his present job is attendance at the training program.

2. The employee shall not produce any goods or perform any other productive work during such periods of training.

3. The training course must be given outside of regular working hours; and

4. The training course is primarily intended to train the employee to a new, different, or additional skill, and is not intended to make the employee more efficient at doing what he has been doing in his present job. (Item 505-1, Remington Lake City Ordinance Plant Service Manual.)"

sulting evasion of the Fair Labor Standards Act—none is here claimed in this respect. The further definition that "Hours Worked" is to be interpreted as meaning "actual working time" is applicable to any of such situations. This last provision is controlling as to the just preceding definition.

■ The statement as to punching the time card "immediately upon entering the plant * * *" might or might not affect the issue. This would depend upon the location of the particular time clock in relation to the place of work of appellant. Since there is no averment in the amended petition nor information in this record as to this location, we must assume that the definition of "actual working time" is not affected by the time card situation. The assumption is necessary since appellant has the burden of clearly stating and proving herself within an exception of the Portal to Portal Act in order to sustain the Jurisdiction of the Court.

The statement that "working hour schedules are posted in each Area" is not helpful. It is the contents of the schedules which might be pertinent here and not the fact that they were posted. We can make no assumption as to such contents in connection with a question of jurisdiction.

■ The net result of considering these definitions of "Hours Worked" is that only "actual working time" can be recovered under the contract pleaded and, therefore, any custom or practice beyond this definition would be inconsistent therewith and prohibited by the Act as a basis for recovery.

■ The amended petition pleaded Executive Order No. 9240 and this was adversely ruled in the trial court. This issue is not presented on appeal, hence must be regarded as abandoned.[9]

The judgment of dismissal is affirmed.

9. As to the broad effect of Executive Order No. 9240, see Levesque v. F. H.

McGraw & Co., 2 Cir., 165 F.2d 585, 587.