**CITIES SERVICE DEFENSE CORPO-
RATION, Appellant,**

**v.**

**George DUTTON et al., Appellees.**

**George DUTTON et al., Appellants,**

**v.**

**CITIES SERVICE DEFENSE COR-
PORATION, Appellee.**

**Nos. 15535, 15536.**

United States Court of Appeals
Eighth Circuit.

Jan. 11, 1957.

Rehearing Denied Feb. 20, 1957.

Cooper Jacoway, Little Rock, Ark. (Talley & Owen, Little Rock, Ark., were with him on the brief), for George Dutton and others.

Frank E. Chowning, Little Rock, Ark. (Henry C. Walker, Jr., Shreveport, La., Moore, Burrow, Chowning & Mitchell, L. B. Burrow, Little Rock, Ark., were with him on the brief), for Cities Service Defense Corp.

Before WOODROUGH, VOGEL and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Defendant-employer appeals from judgment awarding certain employees compensation for unpaid overtime wages. Other employees have filed cross-appeal from judgment denying their claims for additional compensation. All alleged services here involved were performed before the enactment of the Portal-to-Portal Act on May 14, 1947, 29 U.S.C.A. § 251 et seq. Accordingly, the rights of the parties are governed by section 2 of the Portal-to-Portal Act, 29 U.S.C.A. § 252.

The principal issue involved in these appeals is whether section 2 of the Portal-to-Portal Act bars claims for any (all) activities except those compensable by either contract, custom, or practice. An affirmative holding upon this issue would require the denial of all of the employees' claims unless it is shown that the activities were compensable by contract, custom, or practice.

The defendant-employer operated a chemical plant at Maumelle, Arkansas, producing explosives during World War II. Various employees brought suit in federal court for overtime wages which they claimed to be due them under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. These suits were consolidated for trial and are consolidated here. The plaintiff-employees will be generally referred to as employees.

These cases were before this court in Dutton v. Cities Service Defense Corporation, 197 F.2d 458. The employees make some contention that our decision upon the former appeal is an adjudication that they are entitled to relief. Such is not the case. We there vacated the district court's order dismissing the action for failure to state claims upon which relief could be granted and of which the court had jurisdiction under section 2(d) of the Portal-to-Portal Act. This court, after finding that the pleadings raised the fact issue of whether or not the employees' activities were compensable by custom, stated at page 460:

"* * * But upon this appeal from the order of dismissal, this Court is precluded from considering more than is alleged in the complaint, and may not speculate as to whether the evidence at a trial would negative jurisdiction because of the Portal-to-Portal Act."

Upon remand this case was referred to a master who heard testimony and filed findings of fact and conclusions of law. The master found that the time consumed in performing the activities for which recovery was allowed constituted working time, and that recovery was not barred by the Portal-to-Portal Act. All parties filed objections to the master's findings and conclusions. The district court entered an order adopting the master's report, modifying it only to the extent of awarding liquidated damages. Judgment was entered for the employees in the amounts fixed by the master, plus 50 per cent liquidated damages.

We will outline briefly the nature of the employees' activities here involved. The largest group of employees was the ammonium picrate operators group. The master found that for health and safety reasons it was necessary for them to change clothes and bathe, and that by

custom they were allowed and paid 30 minutes overtime daily for that purpose. Such finding is not disputed. The master also found that these employees were entitled to compensation for an additional 17 minutes daily for clocking in and clocking out, waiting, and traveling between the gate and the production unit.[1]

1. The master found that these employees were entitled to compensation for the following items:

|  | Minutes | Total |
|---|---|---|
| Clocking in at Gate No. 9 | 3 | |
| Loading on Bus at Gate No. 9 | 3 | |
| Transportation from Gate 9 to Change House | 5 | |
| Changing Clothes at Change House | 5 | |
| Walking from Change House to Units | 5 | |
| Total going on shift | | 21 |
| Walking from Units to Change House | 5 | |
| Taking Shower at Change House | 5 | |
| Changing Clothes at Change House | 5 | |
| Loading on Bus at Change House | 3 | |
| Transportation from Change House to Gate No. 9 | 5 | |
| Clocking out at Gate No. 9 | 3 | |
| Total going off shift | | 26 |
| Total allowed per shift | | 47 |

The employees were paid for 30 minutes time for clothes changing and bathing which was deducted from the foregoing 47 minutes, leaving the balance of 17 minutes additional overtime.

The situation with reference to the acid plant operators was substantially the same except their travel within the plant consumed less time, and these employees were each allowed 12 minutes additional overtime daily.

The claimants in the two categories above are the beneficiaries of about 83 per cent of the total judgment. However, claims of numerous other types of employees were allowed. Guards were allowed 7½ minutes per day for travel time between their reporting post and the post to which they were assigned. Other employees were found entitled to extra overtime by reason of travel time within the plant, or because they commenced their duties before the regular work period began by distributing tools or clothing to other employees or by the performance of other labor.

Rejected claims involved on the cross-appeal are claims of loading dock men for time consumed in getting their trucks to the working area in the morning and away therefrom at night, claims of maintenance men and carpenters for time required to change clothes, assemble tools, and ride to their working location, and claims of machinists for changing clothes.

We have set out only some of the principal features of the numerous categories of claims here involved, since the exact nature of the activities of the various claimants has no important bearing upon the result we reach.

We are of the opinion that section 2 of the Portal-to-Portal Act bars all claims for overtime compensation for any and all activities performed prior to the date of the enactment of said Act, except such activities as were compensable under express provisions of a contract or by custom or practice. This is true as to section 2 claims even if the activities involved be considered an integral part of the employees' principal activities. Section 2 of the Portal-to-Portal Act provides in part:

"(a) No employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act (in any action or proceeding commenced prior to or on or after May 14, 1947), on account of the failure

of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any activity of an employee engaged in prior to May 14, 1947, except an activity which was compensable by either—

"(1) an express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer; or

"(2) a custom or practice in effect, at the time of such activity, at the establishment or other place where such employee was employed, covering such activity, not inconsistent with a written or nonwritten contract, in effect at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer."

This court recently had occasion to consider the applicability of section 2 of the Portal-to-Portal Act in the consolidated cases of Ciemnoczolowski v. Q. O. Ordnance Corporation (Dunning v. Q. O. Ordnance Corporation), 228 F.2d 929. After the decision of the Supreme Court in Steiner v. Mitchell, 350 U.S. 247, 76 S.Ct. 330, and Mitchell v. King Packing Co., 350 U.S. 260, 76 S.Ct. 337, a rehearing was granted in the Dunning case. After hearing argument upon rehearing, the prior decision denying relief to the employees was reaffirmed. Dunning v. Q. O. Ordnance Corporation, 8 Cir., 233 F.2d 902. In the Dunning case all activities for which relief was sought antedated the passage of the Portal-to-Portal Act. The employees were powder line workers. We found that said workers were compelled to change clothes and bathe for reasons of health and safety. They had not been compensated for clothes changing and bathing time. No contract or custom for paying for such services was established. In denying the claim this court states, at page 905:

"It seems to us that Section 2 of the Portal-to-Portal Act was intended to preclude the allowance of claims such as those in suit, based, as they are, upon clothes-changing and showering activities which took place prior to May 14, 1947, and which were not compensable under any contract, custom or practice."

The Steiner and King Packing Company cases involve section 4 [2] of the Portal-to-Portal Act which deals with activities

---

2. "Relief from certain future claims under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, and the Bacon-Davis Act.

"(a) Except as provided in subsection (b) of this section, no employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act, on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after May 14, 1947—

"(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

"(2) activities which are preliminary to or postliminary to said principal activity or activities,

which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

"(b) Notwithstanding the provisions of subsection (a) of this section which relieve an employer from liability and punishment with respect to an activity, the employer shall not be so relieved if such activity is compensable by either—

"(1) an express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer; or

"(2) a custom or practice in effect, at the time of such activity, at the establishment or other place where such employee is employed, covering such activity, not inconsistent with a written or nonwritten contract, in effect at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer. * * *"

arising subsequent to the passage of the Act. It is apparent that the facts as to mandatory clothes changing in the Steiner and Dunning cases and our present cases are very similar. In each instance changing clothes and bathing were necessary for the employees' safety and health. If our present cases were governed by section 4, the Steiner case would compel us to hold that the clothes changing and bathing were part of the employees' principal activities and compensable as such. However, examination of section 2 and section 4 shows them to be vastly different. Section 2 bars compensation for "any activity" whereas section 4 bars compensation on account of the "following activities." What is meant by "following activities" is explained in subsections (a) (1) and (2) of section 4, set out in footnote 2. In general, the activities for which compensation is denied under section 4 are travel time to and from the place of principal activity, and activities classified as preliminary and postliminary. In Steiner the Supreme Court states 350 U.S. at pages 255–256, 76 S.Ct. at page 335,

> "* * * Had Congress intended the result urged by petitioner, the very different provisions of Sections 2 and 4 would have been unnecessary; Section 2 could have been given prospective as well as retroactive effect."

In Steiner no section 2 claims are involved. The Supreme Court did, however, find it desirable to compare the differences between section 2 and section 4 as an aid to determine legislative intent. With reference to section 2 the Court states 350 U.S. at pages 253, 255, 76 S.Ct. at page 334.

> "The Portal-to-Portal Act was designed primarily to meet an 'existing emergency' resulting from claims which, if allowed in accordance with Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515, would have created 'wholly unexpected liabilities, immense in amount and retroactive in operation.' This purpose was fulfilled by the enactment of Section 2. * * *

> "On the whole it is clear, we think, that while Congress intended to outlaw claims prior to 1947 for wages based on all employee activities unless provided for by contract or custom of the industry, including, of course, activities performed before or after regular hours of work, it did not intend to deprive employees of the benefits of the Fair Labor Standards Act where they are an integral part of and indispensable to their principal activities. * * *"

From the Steiner opinion as a whole it would appear that the last part of the statement quoted, to the effect that Congress did not intend to deprive employees of the benefits of the Fair Labor Standards Act "where they are an integral part of and indispensable to their principal activities", is a statement of the law intended to apply to claims arising under section 4, and not to claims arising under section 2.

This court relied largely upon the above-quoted language from the Steiner opinion, as well as said opinion as a whole, in reaching its conclusion in the Dunning case. Certiorari was denied in the Dunning case on December 3, 1956. 77 S.Ct. 226. We realize that the denial of certiorari does not necessarily mean that the Supreme Court has considered and approved our decision in Dunning. Nevertheless, the Dunning case stands as the last expression of this court on the interpretation to be given to section 2. We adhere to the conclusions reached in Dunning, and hold that section 2 of the Portal-to-Portal Act governing claims arising before May 14, 1947, bars overtime compensation for all activities for which compensation is not provided by contract, custom, or practice.

■ There remains for consideration the question of whether any of claimants have established that any of the activities upon which they base their present claims are compensable by contract, custom, or practice. There is no proof of

any kind that the activities are compensable by contract. Upon the issue of custom or practice, the master's finding, approved by the trial court, is:

"There was no custom or practice on the part of the defendant at any time to pay any of the plaintiffs or intervenors or any employees of the defendant overtime compensation for the various activities for which the respective plaintiffs seek a recovery herein, other than the restricted custom and practice, under specific authority and approval from the Ordnance Department based upon custom in other like plants, of paying thirty (30) minutes daily overtime to the acid plant operators, ammonium picrate operators and acid plant and ammonium picrate maintenance men in the production area, who in their shift work were in close contact with acids and chemicals, which were to compensate them for the time consumed by them daily in the specific activities of changing clothes and bathing, and none other, and the further restricted custom and practice, under specific authority and approval from the Ordnance Department, of paying the guards twenty (20) minutes daily overtime to compensate them for the time consumed in the specified activity of changing clothes and answering roll call. * * *"

The employee-claimants urge that the admitted practice of paying certain workers, who were mandatorily required to change clothes for reason of safety and health, for 30 minutes overtime daily for such bathing and clothes changing established a custom or practice to pay for all of the claimed activities for which compensation is here sought, such as punching the clock, waiting for and riding on the bus to and from the work area, and the like. The master rejected this contention and properly so.

The practice to pay for one type of activity does not establish a practice to pay for vastly different types of activity. The record here and the master's finding show that the practice of compensating for mandatory clothes changing and answering roll call was adopted only after specific authority from and approval by the Ordnance Department. No such authority or approval is shown for payment for other activities. Further, no satisfactory evidence is before us that would establish any custom or practice either in the industry generally or on the part of the defendant to pay for the activities for which claim is here being made. In Bumpus v. Remington Arms Co., Inc., D.C.Mo., 74 F.Supp. 788, the trial court sustained a motion to dismiss a petition for overtime compensation. This court affirmed, 183 F.2d 507, stating, among other things, that the employee has the burden of clearly stating and proving himself to be within an exception to section 2 of the Portal-to-Portal Act in order to sustain the jurisdiction of the court. In our present cases the claimants have failed to establish that their claims fall within any of the exceptions of section 2. No contract, custom, or practice to pay for the services claimed has been established. The master and the trial court so found. We agree.

It would appear that many of the activities involved in these claims, other than those for clothes changing and bathing for reasons of health and safety for which payment has been made, would fall in the categories of travel time and preliminary and postliminary activities. As we have heretofore held that all activities involved in these cases are barred by section 2 of the Portal-to-Portal Act, no purpose will be served in determining whether the evidence supports the finding that the time spent in the activities upon which these claims are based constitutes working time. We emphasize again that these cases are controlled by section 2, the section under consideration in the Dunning case, supra, not by section 4 which was involved in Steiner v. Mitchell, supra.

Since no contract or custom has been established for payment of overtime compensation to the employees for

the activities upon which they base their claims, the court was without jurisdiction to grant relief. Section 2(d) of the Portal-to-Portal Act, 29 U.S.C.A. § 252 (d), provides that courts shall be without jurisdiction to enforce liability for activities not compensable by contract, custom, or practice under section 2(a) and (b) of the Portal-to-Portal Act.

The conclusion we have reached makes it unnecessary to consider any of the other issues raised.

Judgment reversed on defendant's appeal and affirmed on the employees' cross-appeal. Cases remanded to the trial court with directions to dismiss all petitions.